UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS

JOHN CARR                    )
      Plaintiff              )
                             )                          _RB_ C_
                             )   CIVIL ACTION NO: 05-10445 MLW
                             )
SIEMENS DEMATIC CORP.        )
AND AMEC CONSTRUCTION        )
MANAGEMENT, INC.             )
      Defendants             )

## **PLAINTIFF'S PETITION FOR APPROVAL OF SETTLEMENT OF PLAINTIFF'S CLAIMS**

### I.   **Plaintiff's Position**

#### A.   **Facts and Liability**

In late 2002 through early 2003, the Defendant, Siemens Dematic, designed, manufactured, inspected, tested, installed, sold, supplied, maintained, repaired and/or provided start up services on its luggage conveyer machines. Siemens Dematic was to install seventeen of its conveyor lines that it manufactured at Logan Airport's Terminal E located in Boston, Suffolk County, Massachusetts. Siemens Dematic, in turn, hired Shaughnessy for the manual work of assembling the conveyors. Simultaneously the Defendant, AMEC Construction Management, Inc., was the construction manager responsible for Terminal E construction at Logan Airport.

On February 19, 2003, Mr. John Carr was working for Shaughnessy Mill Wright. Mr. Carr was onsite at Terminal E of Logan Airport. He was working as a Millwright on a Siemens Dematic conveyor in another section of the terminal from where the accident occurred. Two Millwrights from Shaughnessy, Mr. Garrity and Mr. Cameron, were assigned to work directly for Siemens in the test phase of the conveyor and were instructed to pick up debris and follow

1

instructions from Siemens Dematic personnel who were running tests on the new conveyor systems from the computer room. On the day of the incident, Mr. Carr happened to be walking through the area of the TC2 and TC3 lines when he was asked by the general foreman, Frank Ryan, to fix a rattling noise in section TC3-13 of the conveyor belt line. At the time the instruction was given, Mr. Carr's two co-workers were testing the adjacent TC2 line. Both TC2 and TC3 lines were not running at the time. Mr. Ryan asked Mr. Carr to check TC3-13. Mr. Carr indicated that nine times out of ten the cause of this rattling is a loose belt guard. After the general foreman issued his instruction, Mr. Carr knelt down, unclipped the belt guard and placed his fingers on the belt to check the tension. It was Mr. Carr's intention to simply press his finger on the rubber belt to feel for tension before doing any work.

The conveyors as designed had an eight second delay and an audio and visual alarm system. The warning alarm and beacons located at TC3-13 and TC3-11 did not flash and/or sound when the conveyors started. No alternative audio or visual warning signals went off to warn Mr. Carr that the conveyor for TC3 line was about to activate. Therefore, the conveyors, while being tested on February 19, 2003, allowed for multiple remotes to activate two different TC conveyor lines without any notification or warning to surrounding workers.

In the split second that Mr. Carr placed his finger on the rubber belt controlling TC3-13, the emergency stop on TC2 line was pulled out at the request of Siemens Dematic. This was done by Mr Robert Garrity, a Shaughnessy employee working under the instruction of Siemens. When Siemens ordered the control test to begin, Garrity activated TC2 belts, and according to the witness, the TC3 belts were simultaneously turned on. Since the accident it has been learned that there were three push stop emergency bottons controlling both TC2 and TC3. The first was at TC2-03, the second at TC2-06, and the third was at TC2-07. It was allegedly unknown to the Shaughnessy Millwrights that any of the emergency push stop buttons on TC2 line were able to start or shut down TC3-11 through 13; a design that was intended because of the merging conveyors.

2

Mr. Carr's hand became caught between the pulley and the belt. Eventually he was able to withdrawal his hand, but it was visibly injured. Co-workers shut down the TC2 line, thus shutting down the TC3 line as well. Mr. Carr was picked up by ambulance and transported to Massachusetts General Hospital (MGH).

## B.    Damages

As a result of this accident, Mr. Carr suffered a complete amputation of the right small finger at the middle phalanx and a crush injury to the index through ring fingers of the right hand. He also has a non-healing fracture to his scaphoid bone in his wrist which required surgery. To date Mr. Carr has received two surgeries. The doctors disagree on the extent of the causal connection between this injury and the accident.

During the past two years, Mr. Carr has attended classes at Cape Cod Community College. Through a joint program with Massachusetts Maritime Academy, Mr. Carr received a certificate this spring for municipal waste water management. This certificate will allow him to be eligible for a job in the field that will require the use of his hands. His current intentions are to return to school in the fall as he is only required to take one more class to receive an additional certificate in industrial waste water management. These combined certificates will qualify him for a grade four position in waste water management, and eventually earn him a salary equivalent to that of a Millwright.

## II.    Defendants' Position

The defendant's position is that the accident is the fault of John Carr's own negligence. Mr. Carr did not complete required lock out/tag out procedures as had been actively discussed on the job site. Further, Mr. Carr's general foreman testified that a moment before the accident he had instructed Plaintiff to check on a rattle and specifically told Plaintiff to lock out and tag the machine. Finally, at the location of the accident there was a manual override switch which would

3

have allowed Mr. Carr to manually shut down the belt and keep it off even if the line was activated. Siemens Dematic argues the conveyor machines were in their test phase and not a final product, therefore express or implied warranties do not apply or were not breached. In addition to the above arguments, both defendants argue that Plaintiff was aware of the danger involved when touching the conveyor belt without shutting down the machine first or checking to see if the machine was being tested. Consequently, the need for warning signs was obviated.

## III.  **Proposed Settlement**

After a day long mediation, the defendants made an offer of $250,000.00 to John Carr to settle the Plaintiffs' claims. The workers' compensation carrier's gross lien was $253,487.00. The workers' compensation carrier has agreed to lump sum the workers' compensation case for $77,000.00, plus a retroactive adjustment of Mr. Carr's Section 34 weekly indemnity benefit, bringing their total lien to approximately $345,487.00. From that amount the lienholder has agreed to take back a net of $67,531.58 in full satisfaction of their lien.

After deducting legal fees, expenses, and the reduced workers' compensation lien amount, John Carr nets $141,131.58 ($67,531.58 plus $73,600 from Worker's Compensation case). John Carr intends to return to Cape Cod Community College for the Fall 2007 semester to take the last course required for his industrial waste-water certificate, which should be awarded in December 2007. Upon completion of both certifications, he will be eligible for a grade four position in waste water management, and plans to continue classes through Spring of 2008 earning him an Associates Degree. For the above aforementioned reasons, the Plaintiff does not wish to litigate this claim further and wishes to proceed with settlement. Therefore, settlement is advisable.

4

In accordance with Hunter v. Midwest Coast Transport, Inc. et al., 400 Mass. 779 (1987), the insurer will pay 45.97% (percentage of fees and costs) of any future c.152 benefits until it has paid $57,468.42, leaving the plaintiff/employee responsible for paying $67,531.59.

The Settlement will breakdown as follows:

1.  **Gross Settlement:**

    John Carr                                                    $250,000.00

2.  **Net to John Carr**                                        $ 67,531.58

    ($250,000 minus 38% fee less expenses

    of  $19,936.83, ½ remainder to workers

    compensation lien holder)

    *In addition, there will be a $77,000

    lump sum plus a retroactive adjustment

    to Mr. Carr's Section 34 weekly

    indemnity benefit.

3.  **Net to Managed Benefit Services Lien**                    $ 67,531.58

    Gross lien of $345,487 was reduced to

    $125,000 gross and $67,531.58 net

    as part of a Workers Compensation case

    settlement.

4.  **Keches & Mallen, P.C. Fee of John Carr**        $  95,000

Contingent Fee Agreement of 38%

pro rated 50% to the plaintiff and

the workers' compensation carrier


5.  **Keches & Mallen, P.C.**

    **Expenses for John Carr**                        $ 19,936.83

pro rated 50% to the plaintiff

and the workers' compensation carrier


## JURISDICTION

Jurisdiction over the instant Petition is expressly conferred upon this Court by M.G.L. Chapter 152 § 15, which states that the Petition requires "the approval of ... the court in which the action has been commenced."

6

## CONCLUSION

For the reasons stated herein, the Parties respectfully request that this honorable Court approve this Petition.

Respectfully Submitted,

The Plaintiff,
John Carr
By his Attorney,

Brian C. Dever
BBO#544203
Keches & Mallen, P.C.
122 Dean Street
Taunton, MA 02780
(508)-822-2000

Paul W. Goodrich, Esq.
268 Summer Street, 6th Floor
Boston, MA 02210
(617) 946-2565
Workers' Compensation Insurer

## **CONFIRMATION OF AGREEMENT BY PLAINTIFF**

I, John Carr, hereby state under the penalties of perjury, that I have read the foregoing Petition and that the terms of the settlement have been explained to me by my counsel. I realize that by agreeing to the settlement, I am forever terminating all of my rights, claims, and causes of action of every kind and nature against the defendant in this action, their servants, agents and employees arising out of my accident of February 19, 2003 In light of the above facts, I formally confirm that I desire that my claim be settled in accordance with the above terms and conditions.

5/31/07

Date

John Carr

8

**CONTINGENT FEE AGREEMENT**

**The Client** _John Carr_       _1103 Avalon Dr._        _Weymouth, MA_
                   (Name)                    (Street & Number)              (City or Town)


**retains the Attorney** _Keches & Mallen, P.C., 122 Dean Street, Taunton, Massachusetts 02780_
                          (Name)                    (Street & Number)              (City or Town)

to perform the legal services mentioned in paragraph (1) below. The attorney agrees to perform them faithfully and with due

diligence.

(1) The claim, controversy, and other matters with reference to which the services are to be performed are:

   Conveyor belt accident at Logan Airport of 2/19/03

(2) The contingency upon which compensation is to be paid is:

   **Recovery against the defendant(s) by way of settlement or judgment.**

(3) The client is not to be liable to pay compensation otherwise than from amounts collected from him by the attorney, expect as follows:

   See Paragraph 4.

(4) Reasonable compensation on the foregoing contingency is to be paid by the client to the attorney, but such compensation (including that of any associated counsel) is not to exceed the following maximum percentage of the gross amount collected.

   _38%_   percent plus expenses before trial;
   _38%_   percent plus expenses after trial has begun.

(5) The client is in any event to be liable to the attorney for his reasonable expenses and disbursements (which include postage, xeroxing, facsimile transmissions, mileage, parking, long distance telephone calls, etc.).

(6) If the attorney is discharged by the client prior to the conclusion of this representation, the attorney is entitled to be then compensated for his reasonable expenses and disbursements. Further, the attorney is to be compensated for the fair value of the services rendered to the client up to the time of discharge, but the amount of the fee shall not be due to the attorney until the subject matter litigation is concluded pursuant to Paragraph 2 and 3 above.

This agreement and its performance are subject to Rule 3:05 of the Supreme Judicial Court of Massachusetts.

   WE EACH HAVE READ THE ABOVE AGREEMENT BEFORE SIGNING IT

Witnesses to signatures

(To client) _____                X _____
                                                              (signature of client)

(To Attorney) _____              _____
                          Dated  _4/10/03_                    (signature of attorney)